# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    CIV 99-355 SC/KBM
                                                    CR 96-489 SC

GILBERT ESPINOZA-SAENZ,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Gilbert Espinoza-Saenz's "motions" to vacate, set aside or correct sentence by a person in federal custody under 28 U.S.C. § 2255. Having considered the arguments, pleadings, relevant law, and being otherwise fully advised, I find that the January 1998 "first motion" raising challenges to presentence report ("PSR") information and to the charge in Count II was timely filed. Nevertheless, I find it is without merit and recommend that it be denied. I further find that the March 1998 "second motion" constitutes an untimely successive motion which should be transferred to the Tenth Circuit Court of Appeals.

### A. Defendant's Original § 2255 Motion Is Timely

Defendant was indicted on charges of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 841(b)(1)(C), and 18 U.S.C. § 2 ("Count II") and conspiracy to commit the same in violation of 21 U.S.C. § 846 ("Count I"). *(Doc. 12)*[1] He

---

[1] Unless otherwise noted, citations are to the pleadings filed in CR 96-489.

pled guilty to both counts in exchange for the Government's agreement not to bring additional charges. *Docs. 19-21.* Prior to sentencing, Defendant received surgery for a condition related to his kidney problems, for which he receives dialysis treatment. *See Docs. 26-28.* His attorney subsequently moved for a downward departure based on Defendant's health, which was denied. *See Docs. 38-39; TR Sentencing, p. 11.*

At his March 10, 1997 sentencing hearing in open court, Defendant was found to be a career offender. He was sentenced to 151 months on the Count I conspiracy charge, was sentenced to the statutory maximum of 60 months on Count II possession with intent to distribute charge (with the sentences to run concurrently), and was advised of his right to appeal. *Doc. 41; TR Sentencing, pp. 14.* Defendant timely filed a *pro se* notice of appeal on March 31, 1997 which raised the issue of the denial of a downward departure.

On April 1, 1997, Defendant's attorney also filed a timely notice of appeal and appellate brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Doc. 45.* Counsel advised Tenth Circuit that the appeal was frivolous because it had no jurisdiction over an appeal challenging a refusal to grant a downward departure. Counsel also filed motion to withdraw. In response, Defendant argued ineffective assistance of trial counsel on several grounds. In an opinion and mandate issued November 4, 1997, the Tenth Circuit dismissed the appeal for lack of jurisdiction over the refusal to downward depart and *expressly* advised Espinoza to bring collateral proceedings as to his ineffective assistance of counsel claims. *Doc. 49.*

Espinoza had ninety days from the entry of the mandate to seek review in the Supreme Court of the United States. Because that deadline would have expired on a Sunday, he could have filed his petition for certiorari the following day, February 2, 1998. However, Espinoza

2

never sought review from the highest court and instead requested relief from the District Court over a year following issuance of the mandate. On December 18, 1998, in his criminal case, Espinoza filed a "motion for enlargement of time" to file a § 2255 motion. Defendant asserted that he had not learned of the Tenth Circuit's November decision until March 1998 and had been only "recently advised" about the "new" one-year statute of limitations. He argued "excusable neglect" because he was under the impression that he had one year from November 4, 1997 to file and had obviously missed that deadline. *Doc. 50.*

Before the Court had an opportunity to rule on the motion for enlargement, Espinoza filed a "Motion to Correct Sentense [sic] and Delete Writ" on January 11, 1999. It is this pleading that the Court deems to be Espinoza's "first motion" pursuant to § 2255. Defendant raised two grounds for relief: (1) the "escape" charge set forth in the PSR was erroneous, and (2) the trial judge had dismissed the charge in Count II during his plea hearing. *See Doc. 52.* That same day he also filed a "traverse" citing his ill health and asking for extra time to file a supplemental § 2255 petition. Although the Court had not given him permission to do so, Espinoza filed a second § 2255 motion on March 29, 1999, raising the ineffective assistance of counsel claims he had brought on his direct appeal to the Tenth Circuit.. *Doc. 54.*

The Magistrate Judge previously assigned this matter deferred ruling on Defendant's motion to file out of time. He ordered the United States to brief the timeliness of the pleadings, and permitted it to respond to the substance of Espinoza's claims. For its response, the United States filed a motion to dismiss arguing that Defendant's January 11th motion should be dismissed as untimely and that his March 29th pleading should be transferred to the Tenth Circuit as an improper successive motion.

3

At the time of the briefing ordered by Magistrate Judge Svet, there was a division of authority regarding when a judgment became "final" for purposes of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA). In a recently published decision, the Tenth Circuit announced that when timely review is sought in the United States Court of Appeals, the date upon which a conviction becomes final is the date the United States Supreme Court denies review. *See Rhine v. Boone,* 182 F.3d 1153, 1155 (10th Cir. 1999). If no petition for certiorari is filed, the date upon which the time for filing a petition for certiorari with the Supreme Court expired starts the running of the one-year time period for filing a § 2255 motion. *Id.*

Thus, Espinoza's one-year limitations period ended on February 2, 1999. Because the first filed pleading in which Defendant raised his claim was timely filed on January 11, 1999, its merits will be addressed.[2]

### B. The Trial Court Did Not Dismiss Count II

Defendant argues he was sentenced for possession of marijuana with the intent to distribute it even though the Court found him "not guilty" of Count II. Although it is necessary to set forth the factual background in some detail in order to put the argument and its validity in context, the allegation is wholly without merit.

---

[2] In his January 11th traverse, Defendant asserted that the accompanying motion and any subsequently filed "supplements" should relate back to an alleged October 1998 "attempt to inform the court" of his § 2255 claims. Clearly, a § 2255 motion was never received for filing in this district prior to January 11, 1999. The copy of a cover letter submitted as an exhibit by Espinoza demonstrates that *if it was ever mailed* in October, he sent it to the incorrect post office box and incorrect physical location for the Santa Fe division. Moreover, Espinoza's motion for enlargement filed on December 18, 1998 made no reference any earlier attempt to seek collateral relief. Because the January 11, 1999 motion is timely, no further comment is necessary.

Defendant was indicted with one other co-defendant. Count II charged them with possession with intent to distribute *less* than 50 kilograms of marijuana. Count I charged them with conspiracy to commit the same, but in amounts *more* than 50 kilograms. Espinoza entered into a written agreement providing that he would to plead guilty to both counts in exchange for the Government's agreement not to bring additional charges against him. *See Docs. 19-21*.

At the plea hearing held November 12, 1996, District Judge Santiago E. Campos reviewed the agreement with Defendant in open court after he had been sworn. The discrepancy between the amount of marijuana charged under Count I and Count II was discussed. The Government explained that at the time of Espinoza's arrest, he was "caught" with less marijuana than had originally been contemplated by the conspiracy. *TR, Plea pp. 41-43*. The following colloquy then took place:

> THE COURT: Is that understood, Mr. Giovannini, does your client understand that? You see, the conspiracy charges a conspiracy to distribute 50 kilograms or more.
> MR. GIOVANNINI: On the conspiracy?
> THE COURT: On the conspiracy, that's correct. But the possession count charges possession of less than 50 kilograms.
> MR. GIOVANNINI: Okay. May I have a minute, Your Honor?
> THE COURT: Surely.
> MR. GIOVANNINI: We understand, your Honor, that's okay.
> THE COURT: Are you all right?
> MR. Giovannini: Yeah.
> THE COURT: Now, Mr. Espinoza . . . has anyone made any promises to you, other than those promises that are contained in this plea agreement, which other promises have induced you to plead guilty in this case?
> THE DEFENDANT. Right now I'm all confused, Your Honor, I'm serious.

*Id., pp. 43-44*.

The Court granted counsel's request for recess, following which counsel indicated that the discrepancy as to amounts charged would be taken up at sentencing. However, the Court again

5

clarified the matter for Defendant per his comments.

> THE COURT: All right. Does your client understand that he is, in Count I, charged with a conspiracy to commit a federal offense, and that federal offense was the distribution of marijuana in a quantity in excess of 50 kilograms. Does he understand that?
> MR. GIOVANNINI: Yes, Your Honor. I believe he does understand that.
> THE COURT: Okay. Do you understand that, Mr. Espinoza? Now, that's the charge.
> DEFENDANT ESPINOZA: I understand the charge, sir, I do.
> THE COURT: All right.
> DEFENDANT ESPINOZA: But I'm confused right now by the way they're trying to –
> THE COURT: You're confused on what?
> DEFENDANT ESPINOZA: *On the pounds, that's what I'm confused on. I understand the charge.*

*Id., pp. 46-47* (emphasis added). The Court explained the distinction again and Defendant indicated that he understood. *Id., p. 48*.

As the prosecutor noted, the basis for the charges were that Espinoza paid someone to transport his marijuana across the border. The approximately 160 pounds of marijuana were carried into the United States *via* backpacks. When the backpackers saw Border Patrol agents, they scattered and ran leaving all but one of the marijuana-filled backpacks lying in the desert. When one of the backpackers was later apprehended, he assisted officers in recovering the backpacks left in the desert. Thereafter, officers attempted a controlled delivery to Defendant of the marijuana recovered from those backpacks. *Id., pp. 59-61*.

Rejecting the prosecution's theory on Charge II, Judge Campos found that the officers failed to relinquish possession of the marijuana during the attempted controlled delivery and was concerned whether the facts as recited were sufficient to establish Defendant's actual or constructive possession. After discussion, the Court specifically found that there was a sufficient factual predicate to support the charge in Count II on an " aiding and abetting" theory. *TR, Plea, pp. 61-66*. The Court explained its conclusion:

6

> THE COURT: . . . I don't feel that he, himself, possessed it at any time. He may have aided and abetted somebody else, but I don't feel that he -- from what you told me, that he had possession once the Government agent found it out in the desert. I will accept your statement as laying a proper predicate for aiding and abetting, as charged in Count II. Okay. Thank you very much.
> 
> This is the point, Mr. Espinoza, that once -- you see, you are charged with having aided and abetted, that is, that you helped somebody else to commit this crime. And actually, if you agree with somebody else to bring it in, you aided and abetted in the possession of that marijuana that was found out in the desert.
> 
> You may not have ever possessed it yourself, but you aided and abetted somebody else in the possession of it. It that understood?
> DEFENDANT ESPINOZA: Yes, sir, Your Honor.

*Id. pp. 65-66.*

At sentencing, Defendant's counsel questioned whether the possession count had been dropped, and asked the court to review what transpired during the plea hearing, which it did. At the sentencing hearing. Judge Campos again explained why he had questioned the factual predicate for the "possession" element but found a plea of guilty sufficient under an aiding and abetting theory. He specifically indicated that he had accepted a plea finding Defendant guilty of Count II on an aiding and abetting theory and did not dismiss the charge. *See TR Sentencing, pp. 2-7.* Thus, Defendant's claim that he was sentenced on a dismissed charge is without any merit.

### C. The Escape Charge Did Not Effect Defendant's Status As A Career Offender

The PSR noted that Defendant had been charged with escape in 1995. He contends that the charge had been "cleared" and, therefore, should not have been used to assess a three-point enhancement to his criminal history category. Even assuming the escape charge was "cleared" prior to sentencing, it had no effect on the sentence imposed. Because of two prior federal drug trafficking convictions, Defendant was sentenced as career offender. As a career offender, under U.S.S.G. § 4B1.1 his criminal history category was automatically raised to Category VI and his

7

offense level was raised to a level 29 based on the possible statutory maximum of up to 20 years imprisonment. The escape charge had no effect on either of these calculations, and Movant cannot be provided relief on this ground.

### D. The Second § 2255 Motion Should Be Transferred to the Tenth Circuit

In his traverse also filed January 11, 1999, Defendant sought an extension to of time to "supplement" the § 2255 motion with new claims beyond the AEDPA one-year deadline. In essence, he argues that his March 29th § 2255 motion and its ineffective assistance of counsel claims relate back to the first motion and should be considered timely filed. However, if the March 29th pleading constitutes a separate § 2255 motion, it is clearly untimely.

The previous Magistrate Judge never ruled on Espinoza's request to supplement his § 2255 motion after the limitations period, and, thus, it remains pending.[3] I am persuaded that in the present situation, the district court lacks the power to extend the AEDPA statutory limitations in advance of the time it has run. *See United States v. Ailsworth*, 1999 WL 1021073 *2 (D. Kan.1999) (finding it did not have authority to extend the deadline for filing a section 2255 motion under similar circumstances). To find to the contrary would "frustrate[] the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final unless any of the other circumstances in 28 U.S.C. § 2255 are applicable."[4] *United States v. Duffus*, 174 F.3d 333, 336 (3rd Cir. 1999).

---

[3] Even if such permission *could* properly be given, such permission was in fact never given to allow Espinoza to file his March 29th motion.

[4] In pertinent part, § 2255 now provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period

8

I agree with the government that the March 29th motion constitutes a separate "second motion" for relief. None of the claims asserted in the March motion appear in the motion filed in January. If these claims were deemed merely "supplemental" to the first motion, Defendant could effectively "end run" the one-year statute of limitations that Congress deemed necessary and imposed by the AEDPA legislation. "A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period." *Id.* at 337.

Because the one-year statute of limitations expired in February, the Court must examine whether Defendant has set forth sufficient grounds to equitably toll the period. He relies upon his ill health as such a basis for relief from the AEDPA deadline. It is clear, however, that he knew of these ineffective assistance of counsel claims long before he filed any § 2255 motion. Indeed, he had asserted the same claims on his direct appeal and was specifically directed by the Tenth Circuit that he must raise them in a collateral proceeding. Nothing prevented him from raising these claims in his January motion. Thus, his own prior actions demonstrate that his kidney problems did not delay his filing. Therefore, the Court concludes that equitable tolling does not

---

shall run from the latest of--
    (1) the date on which the judgment of conviction becomes final;
    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

apply because Espinoza fails to demonstrate that he has diligently pursued claims and has in some "extraordinary way" been prevented from asserting his rights.

Section 2255 provides that a court of appeals panel must authorize the filing of a second or successive motion. Because the Defendant failed to seek authorization from the Tenth Circuit to file the March 29th motion, the district court lacks jurisdiction to consider it. *See United States v. Avila-Avila*, 132 F.3d 1347, 1348-49 (10th Cir. 1997). "[W]hen a second or successive ... § 2255 motion is filed in the district court without the required authorization . . . the district court should transfer the petition or motion to [the court of appeals] in the interest of justice pursuant to [28 U.S.C. § 1631.]" *Coleman v. United States*, 106 F.3d 339, 341 (10th Cir.1997).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's January 11, 1999 motion to vacate, set aside or correct sentence by a person in federal custody under 28 U.S.C. § 2255 *(Doc. 52 in CR 96-489 SC)* be DENIED;

2. Defendant's requests for enlargement of time *(Docs. 50 & 53 in CR 96-489 SC)* be DENIED;

3. Defendant's Motion for Summary Judgment *(Doc. 11)* be DENIED; and

4. Defendant's March 29, 1999 motion to vacate, set aside or correct sentence by a person in federal custody under 28 U.S.C. § 2255 *(Doc. 1)* be TRANSFERRED to the United States Court of Appeals for the Tenth Circuit.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE